# Richmond.

## RICHMOND STANDARD STEEL, SPIKE & IRON COMPANY v. CHESTERFIELD COAL Co.

### FEBRUARY 4, 1904.

#### Absent, Cardwell, J.

1. EVIDENCE—*Variance Between Allegation and Proof—Parol Evidence to Vary Written Contract,*—Where an undated written contract is offered in evidence in support of a plea, and is rejected on account of a material variance between the contract and the plea as to matters other than the date, it is not error to reject evidence as to its date, or the circumstances leading up to its execution. If the date is the only incompleteness alleged in the contract offered, and there is no claim that the contract does not in other respects contain all the terms of the contract between the parties, and there is a material variance between the other terms of the contract offered in evidence and that set forth in the plea, then the date is an immaterial matter, and parol evidence will not be received to vary the terms of the written contract offered in evidence.

2. PLEADINGS—*Proof—Variance—Amendment—Code, Section 3384.*—If, upon the trial of an action at law, there is a variance between a contract set out in a plea, and the contract offered in evidence in support of the plea, and no motion is made to amend the plea so as to conform to the evidence tendered in support of it, nor to allow the jury to find the facts so that the court may give judgment according to the right of the case, as provided by Code, section 3384, then the contract offered in evidence should be excluded.

Error to a judgment of the Corporation Court of the city of Manchester, in an action of *assumpsit,* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*William L. Royall,* for the plaintiff in error.

*Wm. Crump Tucker* and *Coke & Pickrell,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The Chesterfield Coal Company instituted its action of *assumpsit* to recover the sum of $233.56 for coal sold and delivered to the Richmond Standard Steel, Spike and Iron Company. The defendant appeared, and issue was joined upon the plea of *non assumpsit,* and a special plea filed under section 3299 of the Code. Upon the trial there was a verdict for the plaintiff for the amount claimed in the declaration, for which the court rendered judgment, after overruling the defendant's motion to set aside the verdict because contrary to the law and the evidence.

To sustain the issue on its part, the defendant offered to introduce in evidence a writing which it stated was the contract relied on in its pleading. Objection was made to its introduction, which the court sustained, and refused to allow it to go in evidence.

The writing, the circumstances under which it was offered, and the objection made to its introduction in evidence, appear from bills of exception, numbered one, two, and three, which are as follows:

### Bill of Exception No. 1.

"Be it remembered, that upon the trial of this cause and after defendant had introduced as witnesses Meriwether Jones, who had completed his testimony, and J. T. Jewett, who was then

being examined in chief, as set out in bill of exceptions No. 10 herein, which is hereby referred to and made a part hereof, the defendant, after asking said witness the sixth question set out in bill of exception No. 10, offered in evidence a certain letter from John S. Lear & Co. to J. C. Dininny, dated November 6, 1901, which letter the court admitted in evidence, with the provision that if the agency was not established, the jury would be instructed to disregard it, whereupon the plaintiff moved the court to exclude said letter until the defendant had introduced in evidence the contract on which it relied, whereupon defendant's counsel offered in evidence a certain contract, which is in the words and figures following, to-wit:

### "Contract for Fuel.

"Agreement entered into this 20th day of May, 1902, by and between the Chesterfield Coal Co., of New York, N. Y., of the first part, and Richmond Standard Steel, Spike & Iron Co., of Richmond, Va., of the second part.   Witnesseth:

"That the party of the first part agrees and binds itself to furnish and deliver to the party of the second part, on board cars at Winterpock, Va., all of the Clover Hill R. O. M. coal, same quality as sample sent us, they may need from the date hereof until May 31, 1903, approximating a quantity of 2,500 (more or less) tons, and to ship the same in such quantities and at such times as the party of the second part may, from time to time, direct, during the continuation of this contract, and at the following prices per ton, 2,240 pounds, viz.: $2.00 f. o. b. mines.

"Two dollars.

"The party of the second part agrees to buy from the party of the first part all of the Clover Hill R. O. M. coal it may need during the period hereinbefore specified, and to pay therefor to the party of the first part, at the price set forth above, on or before the 15th day of each calendar month for all shipments made

during the previous month.    All settlements to be made on railway scale weights as ascertained by initial lines, and as shown on bills to be rendered by the party of the first part, in accordance with the usages of the coal trade. ·

"Deliveries of coal under this contract are subject to strikes, accidents, interruptions to transportation, and other causes beyond the control of the party of the first part, which may delay. or prevent shipment.

"When such interruptions to deliveries occur, no deficit shall be made up after the time limit noted above in this agreement, except it be mutually agreed so to do by both parties to this agreement.

"In witness whereof, the parties hereto have set their hands this ........ day of .............., 190..

> "CHESTERFIELD COAL CO.,
> "RICHMOND STANDARD
>            STEEL SPIKE & IRON CO.,
> "By CORBIN WARWICK,
>            "Vice-Pres. and Gen. Mgr.

To the introduction of which said contract the plaintiff objected, and moved the court to exclude the same under the circumstances and for the reasons appearing in the transcript of the evidence set out in bill of exceptions No. 10, which motion the court sustained, and excluded said contract from the evidence herein; to which ruling of the court sustaining said motion and excluding said contract the defendant, by counsel, excepted, and tenders to the court this, his first bill of exception, which he prays may be signed, sealed and made a part of the record, which is accordingly done."

### Bill of Exception No. 2.

"Be it remembered, that upon the trial of this cause and after defendant had introduced as witnesses Meriwether Jones and J.

T. Jewett, and while J. T. Jewett was being examined in chief as set out in bill of exception No. 10 herein, which is hereby referred to and made a part hereof, the defendant, by counsel, propounded to said witness a certain question, numbered 36 in his testimony as set out in said bill of exceptions No. 10, as follows:

'Please tell me what Mr. Warwick's orders were ?'

Which was objected to by plaintiff; whereupon counsel for the defendant stated to the court that he had stated all along that the written contract, which he showed to the court, was only a part of the contract really made between the parties; that that contract was on its face incomplete in showing the want of a date; that he was then attempting to show all the facts which led to the making of the agreement, of which the writing is only a part evidence, in order that its want of a date may be shown, and its true meaning explained; which objection the court sustained, and refused to allow said question to be propounded to and answered by said witness, to which ruling of the court the defendant excepted, and tenders to the court this its second bill of exceptions, which it prays may be signed, sealed, and made a part of the record, which is accordingly done."

## Bill of Exceptions No. 3.

"Be it remembered, that upon the trial of this cause and after defendant had introduced as witnesses Meriwether Jones, who had completed his testimony, and J. T. Jewett, who was then being examined in chief, as set out in bill of exception No. 10 herein, which is hereby referred to and made a part hereof, the defendant, by counsel, after asking said witness the 45th question, as set out in his testimony in said bill of exception No. 10, to which witness had replied: 'The Chesterfield Coal Company,' offered in evidence a certain written paper dated May 20, 1902, signed by the Richmond Standard Steel, Spike and

Iron Company, by Corbin Warwick, Vice-President and General Manager, and which is the same paper set out at large in bill of exception No. 1 herein; to the introduction of which said written paper in evidence the plaintiff objected, which objection the court sustained and refused to allow said written paper to be introduced in evidence, to which ruling of the court the defendant excepted, and tenders to the court this, its third bill of exception, which it prays may be signed, sealed and made a part of the record, which is accordingly done."

Bill of exception No. 10, to which the foregoing bills of exception refer, contains the following questions, answers and objections, which throw some light upon the circumstances under which the writing was offered, the objections to its introduction in evidence and the rulings of the court:

"Mr. Crump: I move to reject that letter and all testimony of this character until the Standard Steel, Spike & Iron Company have offered to prove the contract on which it relies.

"Mr. Royall: This is the beginning of my proof now.

"Mr. Crump: I ask the court to ask the witness, or the counsel, whether that contract is not in writing; and if it is, I object to this oral testimony.

"Mr. Royall: The contract is in writing, but I want to prove that the witness was the agent in making the contract.

"Mr. Crump: I object to any oral testimony until that contract is tendered in evidence, in order that it may be inspected by the court and counsel, and be seen if oral testimony is admissible.

\* \* \* \* \* \* \* \* \* \* \*

"Mr. Royall: I will offer in evidence the contract relied upon in the pleading in this case.

"Mr. Crump: I object to it for three reasons: First, it is not described in the pleading; if the contract is the paper intended to be relied upon, there is a variance between the pleading and the proof. In the next place, it is unquestionably within the statute of frauds, a contract for one year and nine

days on its face; and in the next place, because it is a contract made by a corporation that had no right to make it or tender it."

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"35th Q. Now, Mr. Jewett, had you, prior to writing that letter, come to an understanding with Mr. Warwick about his, Warwick's, buying coal from Mr. Dininny?

"A. Well, I had taken his orders.

"36th Q. Please tell me what Mr. Warwick's orders were?

"Mr. Crump: I object on two grounds: First, that the court has been assured by the counsel that the contract which was described in the pleading, and which was the basis of this action, and which was to be relied on in proof, was in writing, and that contract has been tendered in evidence and been exhibited to the court and been rejected, because of the contention of counsel that the written contract upon which the defendant at bar stated he rested his case, was not properly described in the plea, and was, moreover, on its face, within the statute of frauds. On that ground I object to any oral testimony concerning the contract mentioned in the letter just read, which was stated before at the bar of the court by counsel for defendant to be the contract which he has tendered in evidence, and which has been rejected.

"Mr. Royall: Defendant's counsel replies that he has stated all along to the court that the written contract which he showed to the court is only a part of the contract really made between the parties; that that contract is on its face incomplete, in showing its want of date; and defendant's counsel is now undertaking to show all of the facts which led to the making of the agreement between the parties, of which that writing is only a part evidence, in order that the want of date may be shown, and the true meaning may be explained.

"The Court: I shall sustain the objection; you will have to stand on the contract."

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"38th Q. Did you put any agreement between you and Warwick in respect to the sale by you of the Chesterfield Coal Company's coal, and the purchase by Warwick of the Chesterfield Coal Company's coal; did you put any such agreement into writing and send it to Warwick?

"A. There was no correspondence between Mr. Warwick and ourselves at all.

"39th Q. I asked you did you put any such agreement into writing, and send it to him for his signature?

"A. Yes, sir; we submitted that contract and begged him to sign; solicited his signature, to be sent on to New York for the approval of the principal.

"40th Q. Look at the paper I now hand you and say whether that is the agreement which you sent to Warwick?

"A. This is a carbon copy of the contract submitted to Mr. Warwick.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"By Mr. Royall: I now offer in evidence a paper signed by the Richmond Standard Steel, Spike & Iron Co., by Corbin Warwick, vice-president and general manager, purporting to be a contract between the Chesterfield Coal Company and the Richmond Standard Steel, Spike & Iron Co., described in its beginning as 'an agreement entered into this 20th day of May, 1902,' and concluding as follows: 'In testimony whereof, the parties hereto have set their hands this .... day of ........., 19..,' the same being an agreement by which the Chesterfield Coal Co. was to sell the Standard Steel, Spike & Iron Co. certain coal, and the Standard Steel, Spike & Iron Co. was to purchase same from the Chesterfield Coal Co., and being the same paper referred to in 40th question above.

"The Court: The court rejects the paper, and states that it has already rejected the paper heretofore.

"By Mr. Crump: Counsel for plaintiff moves the court to exclude this paper, and not admit it in evidence, on the ground

that it is obnoxious to the statute of frauds; and being the same paper as to which counsel for the defendant has made the statement that it is the paper described in the plea and relied upon as the basis for this suit, it constitutes a variance between the pleading and proof.   And defendant's counsel then and there excepted to said ruling and action of the court."

The special plea, after stating the circumstances under which the contract was entered into, sets forth its terms as follows:

"After this plaintiff resumed its solicitations that defendant should buy its coal from it, and defendant, explaining to plaintiff the press of orders in its mill, entered into a contract with plaintiff in the month of May, 1902, to buy from plaintiff all of the coal for one year from the date of said contract, that it should use in said year in its said furnaces, which is the only contract that was made between the plaintiff and defendant, and plaintiff's claim against defendant grows out of that contract.   By the terms of this contract plaintiff was to furnish defendant two carloads of its coal each week during the period of one year from the date of the same, of same quality as that supplied in the three carloads above described that defendant had used, and defendant was to pay plaintiff for same at the rate of $2 per ton of 2,240 pounds, free on board of cars at the mines, and plaintiff was to send to defendant each week two carloads of said coal, which defendant was to pay for at said rate, and defendant was to pay the freight on same from said mines to defendant's mill."

The court refused to allow the contract set out in the writing to be introduced in evidence upon two grounds: First, because it varied materially from the contract set up in the special plea, and, second, because it was an agreement not to be performed within a year, and was not signed by the party to be charged.   Code, section 2840.

If there was a variance between the contract offered in evidence and that set up in the plea, it is wholly immaterial

whether or not it was within the statute of frauds, as to which we express no opinion, so far as its admissibility in evidence was concerned, for neither an oral nor a written contract is admissible in evidence when there is a material variance between it and the contract set up in the pleadings, if objected to.

That there is material variance between the contract set up in the plea and that which was sought to be proved at the trial by the introduction of the rejected writing, is clear. This we do not understand defendant's counsel to controvert, but his contention is that the court had no right to pass upon the question of variance until he had introduced all his evidence, since he was compelled by the court, at the instance of the plaintiff, to offer the writing in evidence when he did, although he insisted at that time that "it is an incomplete paper, and that it will be necessary for the court to consider much other matter in order that it may find out from it all what the contract between the parties is."

It is true, the defendant's counsel did not offer the writing in evidence until objection was made that if the contract relied on was in writing, oral evidence as to the contents was not admissible, but as soon as that objection was made, counsel for defendant declared that the contract relied on in the pleading was in writing, and offered the writing in evidence of his own motion. When objection was made to a question asked one of the defendant's witnesses and sustained by the court, as disclosed by bill of exception No. 2, counsel for defendant stated to the court that he had stated "all along to the court that the written contract which he showed to the court is only a part of the contract really made between the parties; that that contract is on its face incomplete, in showing its want of a date; and defendant's counsel is now undertaking to show all of the facts which led to the making of the agreement between the parties, of which that writing is only a part evidence, in order that the want of date may be shown, and the true meaning may be ex-

plained." In that statement counsel only claims that the written contract offered in evidence was incomplete in one respect, and that was as to its date. There is no claim that the writing offered in evidence and rejected by the court did not contain the terms of the contract between the parties, except its date. The variance between the contract set out in the writing, and the contract set up in the plea was not as to its date, but as to other matters, so that if the court had allowed evidence to be introduced to show that the correct date of the writing was other than that which it bore, it would not have cured the objection made to its admissibility by reason of the variance.

When the court held that there was a material variance between the contract set up in the plea and that contained in the writing, the defendant might have asked leave to amend his plea, under section 3384 of the Code, which provides that if at the trial of any action there appears to be a variance between the evidence and the allegations or recitals, the court, if it consider that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended on such terms as to the payment of costs or postponement of the trial, or both, as it may deem reasonable; or, instead of the pleadings being amended, the court may direct the jury to find the facts and after such finding, if it consider the variance such as could not have prejudiced the opposite party, shall give judgment according to the right of the case. But no such motion was made then or at any time during the trial.

There being a material variance between the contract sought to be proved and that set out in the plea, and no motion being made to amend the plea so as to conform its averments to the proof, or to otherwise take advantage of the provisions of section 3384 of the Code, the court did not err in excluding such evidence.

The court having rightly refused to allow a contract to be

proved different from that set up in the plea, there was no error in its other rulings, set out in bills of exception 2, 4, 5, 6, 7, 8, and 9, refusing to allow evidence to be introduced tending to prove that there was such a contract, and the damages that resulted from its breach.

Upon the evidence before the jury, which is set out in bill of exceptions No. 10, the verdict is clearly right, and the court did not err in refusing to set it aside and grant a new trial.

We are of opinion that the judgment must be affirmed.

*Affirmed.*